UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-CV-26141-RAR

MASTEC, INC.,

    Plaintiff,

v.

QBE SPECIALTY INSURANCE CO., *et al.*,

    Defendants.

_____/

**ORDER REMANDING CASE**

**THIS CAUSE** comes before the Court upon Plaintiff's Motion to Remand ("Motion"), [ECF No. 27], filed on January 20, 2026. Defendants QBE Specialty Insurance Company, Illinois Union Insurance Company, Great American E&S Insurance Company, and National Fire & Marine Insurance Company filed a Response in Opposition to Plaintiff's Motion ("Response"), [ECF No. 39], to which Plaintiff filed a Reply ("Reply"), [ECF No. 45]. Having carefully reviewed the filings, the record, and being otherwise fully advised, it is hereby

**ORDERED AND ADJUDGED** that the Motion, [ECF No. 27], is **GRANTED** as set forth herein.

**BACKGROUND**

**I.  Factual Background**

This case involves an insurance coverage dispute. On December 19, 2021, Plaintiff MasTec, Inc. ("MasTec") purchased Henkels & McCoy Group, Inc. ("Henkels") pursuant to an Agreement and Plan of Merger ("Transaction"). Compl., [ECF No. 1-2] ¶ 1, Ex. A. In connection with the close of the Transaction, MasTec purchased Buyer-Side Representations and Warranties Insurance from Defendants QBE Specialty Insurance Company ("QBE"), Illinois Union Insurance

Company ("Illinois Union"), Arch Reinsurance Ltd. ("Arch Reinsurance"), Markel Bermuda Limited ("Markel Bermuda"), Arcadian Risk Capital Ltd. ("Arcadian"), Arch Transactional Liability Consortium 9804 ("Arch Transactional"), Great American E&S Insurance Company ("Great American"), National Fire & Marine Insurance Company ("National Fire & Marine"), and HDI Global Specialty SE ("HDI").  Compl ¶ 2.

Specifically, MasTec obtained a Buyer-Side Representations and Warranties Insurance Policy from QBE ("Primary Policy"), which, subject to all its specific terms, conditions, and limitations, affords certain coverage to MasTec for breaches, certain representations, and warranties by Henkels.  Compl. ¶¶ 9, 52, Ex. B.  Illinois Union issued an Excess Buyer-Side Representations and Warranties Policy ("Excess Policy"), which covers losses that exceed the limits of the Primary Policy.  Compl. ¶ 10, Ex. B.  Arch Reinsurance, Markel Bermuda, Arcadian, Arch Transactional, Great American, National Fire & Marine, and HDI ("Sidecar Defendants") all subscribe to the Excess Policy via Liability Sidecar Facility Policies ("Sidecar Policies").  Compl. ¶¶ 11–17, Ex. B.

Under the Sidecar Policies, Illinois Union serves as the Lead Claims Agreement Party for the Sidecar Defendants.  Compl., Ex. B at 218, 226.  The Sidecar Policies state, "[a]ny claim is to be controlled and managed by the Lead Claims Agreement Party.  The Insurer(s) agree to follow the decisions of the Lead Claims Agreement Party, as well as the determinations by the Lead Claims Agreement Party with respect to anything involving a claim (including but not limited to any decision that affects rights under the policy, including but not limited to subrogation (including waivers), erosion, increase or decrease of retention, settlement, and/or following the Primary Policy)."  Compl., Ex. B at 218, 226.

After finalizing the Transaction, MasTec discovered that Henkels had breached various representations and warranties in the Agreement and Plan of Merger.  Compl. ¶¶ 3, 55.  MasTec

conducted an investigation and thereafter served a Claim Notice on each Defendant, requesting insurance coverage under the Buyer-Side Representations and Warranties Insurance Policies ("Policies").  Compl. ¶¶ 4, 61.  Defendants, however, denied coverage based on an exclusion in the Policies.  Compl. ¶¶ 4, 62.

On December 2, 2025, MasTec brought this action against Defendants in the Eleventh Judicial Circuit in and for Miami-Dade County, Florida.  *See* Compl.  The Complaint alleges claims against Defendants for breach of contract under Florida common law and declaratory relief under Chapter 86 of the Florida Statutes.  Compl. ¶¶ 64–68 (Breach of Contract), 69–77 (Declaratory Judgment).  Thus, MasTec's Complaint proceeds entirely under Florida law.  *See generally* Compl.  There are no federal questions or issues presented in the Complaint.

## II.  Procedural Background

On December 30, 2025, QBE removed this action from Florida's Eleventh Judicial Circuit to federal court claiming diversity jurisdiction under 28 U.S.C. § 1332.  Notice of Removal, [ECF No. 1] ¶ 4.  As to the citizenship of the parties for purposes of subject matter jurisdiction, MasTec is a Florida corporation with its principal place of business in Florida, Compl. ¶ 7; QBE is a North Dakota corporation with its principal place of business in New York, Compl. ¶ 9; Illinois Union is an Illinois corporation with its principal place of business in Pennsylvania, Compl. ¶ 10; Arch Reinsurance is a Bermuda limited company with its principal place of business in Bermuda, Compl. ¶ 11; Markel Bermuda is a Bermuda limited company with its principal place of business in Bermuda, Compl. ¶ 12; Arcadian is a Bermuda limited company with its principal place of business in Bermuda, Compl. ¶ 13; Arch Transactional is a Bermuda consortium that is made up of three syndicates whose members are not citizens of Florida, Notice of Removal ¶ 12; Great American is an Ohio corporation with its principal place of business in Ohio, Compl. ¶ 15; National Fire & Marine is a Nebraska corporation with its principal place of business in Nebraska,

Compl. ¶ 16; and HDI is a German company with its principal place of business in Germany, Compl. ¶ 17. In the Notice of Removal, QBE indicates that "[a]ll defendants who have been properly joined and served consent to the removal of this action." Notice of Removal ¶ 20. QBE, however, was the only Defendant to sign the Notice of Removal. *See* Notice of Removal at 6.

On January 6, 2026, the Court entered an Order Requiring Removal Status Report, [ECF No. 6], requiring, among other things, a "brief statement by each Defendant explaining whether or not each has joined in or consented to the notice of removal." *Id.* at 1. QBE filed its Removal Status Report, [ECF No. 24], on January 20, 2026, explaining that "Counsel for Defendants Arch Reinsurance Ltd., Markel Bermuda Limited, Arch Transactional Liability Consortium 9804, and HDI Global Specialty SE advised [QBE's] counsel that they purportedly do not join in or consent to the removal." *Id.* at 4 n.2. However, in connection with QBE's Removal Status Report, Illinois Union filed a Certificate of Consent to Removal, [ECF No. 24-2], indicating that Illinois Union, as the Lead Claims Agreement Party, consented to removal of this action on behalf of itself and all of the Sidecar Defendants.

On January 20, 2026, Plaintiff filed the instant Motion requesting that this action be remanded. [ECF No. 27]. MasTec argues that remand is proper because Defendants failed to unanimously consent to removal in a timely manner. *See generally* Mot.; Reply. QBE, Illinois Union, Great American, and National Fire & Marine filed their Response in Opposition to the Motion to Remand, maintaining that this action was properly removed. *See generally* Resp. In an affidavit attached to the Response, counsel for Arch Reinsurance, Markel Bermuda, Arch Transactional, and HDI avers that "[t]o the extent that Insurers' consent is relevant, the Insurers now affirmatively join the motion for removal and consent to removal of this action." [ECF No. 39-1] ¶ 5. In another affidavit attached to the Response, counsel for QBE declares that "[b]ased on those conversations with representatives or counsel for QBE's co-defendants, I understood that,

as of December 30, 2025, all defendants consented to the removal of this action." [ECF No. 39-2] ¶ 5.

## LEGAL STANDARD

### I. Subject Matter Jurisdiction

A defendant in a civil action may remove a case from state to federal court only if it "could have been brought, originally, in a federal district court." *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 83 (2005); *see also* 28 U.S.C. § 1441(a). Federal courts are empowered to hear only those cases "within the judicial power of the United States as defined by Article III of the Constitution, and which have been entrusted to them by a jurisdictional grant authorized by Congress." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999) (citation and quotation marks omitted).

Federal district courts have original jurisdiction based on diversity of citizenship where the parties are citizens of different states and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). A corporation is "deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). And a limited liability company "is a citizen of any state of which a member of the company is a citizen." *Rolling Greens MHP, L.P. v. Comcast SCH Holdings, LLC*, 374 F.3d 1020, 1022 (11th Cir. 2004). Diversity jurisdiction requires complete diversity, meaning that no plaintiff can be a citizen of the same state as any defendant. *See Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998).

This case satisfies the section 1332 requirements for federal subject matter jurisdiction. It is undisputed that: Plaintiff is a citizen of Florida, Compl. ¶ 7, Notice of Removal ¶ 6; none of the Defendants are citizens of Florida, Compl. ¶¶ 10–17, Notice of Removal ¶¶ 7–15; and the amount in controversy exceeds $75,000, Compl. ¶ 20, Notice of Removal ¶ 17. Accordingly, no party

contests the Court's subject matter jurisdiction over the case.  *See generally* Mot.; Resp.; Reply.

Instead, Plaintiff asserts that Defendants have violated proper removal procedure.

## II.  Unanimous Consent

A defendant seeking to remove an action on the basis of diversity must satisfy certain

procedural requirements.  *See* 28 U.S.C. § 1446.  For removal to be proper "[w]hen a civil action

is removed solely under section 1441(a), all defendants who have been properly joined and served

must join in or consent to the removal of the action."  28 U.S.C. § 1446(b)(2)(A).  This is known

as the "unanimity rule" or the "unanimity requirement."  A removing defendant bears the burden

of not only establishing federal jurisdiction but also compliance with the procedures for removal,

as a matter of fact and law.  *Ennix v. Abbott Lab'ys*, 794 F. Supp. 3d 1177, 1180 (S.D. Fla. 2024);

*Leonard v. Enter. Rent A Car*, 279 F.3d 967, 972 (11th Cir. 2002); *Pacheco de Perez v. AT & T

Co.*, 139 F.3d 1368, 1373 (11th Cir. 1998).

Upon removal of an action to a federal district court, 28 U.S.C. § 1447(c) "implicitly

recognizes two bases upon which a district court may . . . order a remand: when there is (1) a lack

of subject matter jurisdiction or (2) a defect other than a lack of subject matter jurisdiction."

*Hernandez v. Seminole Cnty.*, 334 F.3d 1233, 1236–37 (11th Cir. 2003) (quoting *Snapper, Inc. v.

Redan*, 171 F.3d 1249, 1252–53 (11th Cir. 1999)).  A "defect other than a lack of subject matter

jurisdiction" may include noncompliance with one of the procedural requirements for removal.

*See id.* at 1237.  "Because removal jurisdiction creates significant federalism concerns, federal

courts are directed to construe removal statutes strictly" with all doubts regarding jurisdiction

being resolved in favor of remand.  *Univ. of S. Ala.*, 168 F.3d at 411 (citations omitted).

## ANALYSIS

Plaintiff asserts that Defendants have failed to meet their burden of establishing unanimous

consent as Illinois Union and the Sidecar Defendants did not timely consent to removal.  The

unanimity requirement is satisfied if one or more co-defendants files a notice of removal, and all remaining co-defendants "thereafter timely file either their own removal petitions or their joinder in or consents to the original petition" within the thirty-day period prescribed by section 1446(b). *Miami Herald Pub. Co., Div. of Knight-Ridder Newspapers, Inc. v. Ferre*, 606 F. Supp. 122, 124 (S.D. Fla. 1984) (citation, quotation marks, and emphasis omitted).  The thirty-day period is calculated from the date of service on that defendant or the removing defendant, whichever is later, since "any earlier-served defendant may consent to the removal even though that earlier-served defendant did not previously initiate or consent to removal." 28 U.S.C. § 1446(b)(2)(B)–(C); *Allen v. Hampton*, No. 25-cv-0063, 2025 WL 714444, at *1 (M.D. Ala. Mar. 5, 2025) (citing *Bailey v. Janssen Pharmaceutica, Inc.*, 536 F.3d 1202, 1204–05, 1207 n.8 (11th Cir. 2008)).

Here, QBE was served on December 10, 2025, [ECF No. 8], and timely filed its Notice of Removal on December 30, 2025, [ECF No. 1].  None of the other Defendants joined QBE's Notice of Removal, but the Notice does state that "[a]ll defendants who have been properly joined and served consent to the removal of this action."  Notice of Removal ¶ 20.  This is not disputed by the parties.  Plaintiff, however, points out that neither Illinois Union nor the Sidecar Defendants independently consented to removal on the record by January 9, 2026.  Mot. at 6–7.

Moreover, on January 6, 2026, the Court ordered QBE to file a Removal Status Report, including a "brief statement by each Defendant explaining whether or not each has joined in or consented to the notice of removal." [ECF No. 6] at 1.  And on January 20, 2026, QBE filed its Removal Status Report and indicated that "Counsel for Defendants Arch Reinsurance Ltd., Markel Bermuda Limited, Arch Transactional Liability Consortium 9804, and HDI Global Specialty SE advised [QBE's] counsel that they purportedly *do not join in or consent* to the removal." [ECF No. 24] at 4 n.2 (emphasis added).  Therefore, Plaintiff argues that all Defendants did not timely consent to removal and removal was thus improper.  Mot. at 4–8.  Defendants counter that they

have now all affirmatively joined in and consented to the removal of this action by subsequently filing a Certificate of Consent to Removal and by joining the Response in Opposition to the Motion to Remand.  Resp. at 11–14.  Accordingly, Defendants maintain that they have cured any purported procedural defects.

Plaintiff and Defendants acknowledge that there is conflicting caselaw as to <u>when</u> and <u>how</u> consent must be effectuated by co-defendants.  Resp. at 12; Reply at 4.  On the issue of how consent must be indicated, Defendants contend that there is no requirement that consent to removal be stated on the record.  Resp. at 11–12 (citing *Hartford Cas. Ins. Co. v. AIX Specialty Ins. Co.*, No. 23-20250, 2023 WL 5337528, at *2 (S.D. Fla. July 31, 2023), *report and recommendation adopted sub nom*. *Hartford Cas. Ins. Co. v. Colony Ins. Co.*, No. 23-20250, 2023 WL 5333128 (S.D. Fla. Aug. 18, 2023); *Strutts v. Enter. Leasing Co. of Fla., LLC*, No. 19-10113, 2019 WL 6838505, at *3–4 (S.D. Fla. Dec. 16, 2019), *report and recommendation adopted sub nom. Strutts v. Henry*, No. 19-10113, 2020 WL 9549671 (S.D. Fla. Feb. 18, 2020); *J.L. as next friend of K.L. v. Benton*, No. 20-cv-01309, 2021 WL 148743, at *2 (N.D. Ala. Jan. 15, 2021)).  Plaintiff retorts that "an official, affirmative and unambiguous joinder or consent to the notice of removal is required" by defendants.  Mot. at 7 (quoting *Cox v. Auto Owners Ins. Co.*, No. 17-cv-00490, 2017 WL 4453334, at *2 (M.D. Ala. Oct. 5, 2017)).  And although consent does not necessarily require that each defendant sign a removal petition, "'there must be some timely filed written indication from each served defendant, or from some person or entity purporting to act on its behalf in this respect and to have the authority to do so, that it has actually consented to such action.'"  *Whetstone v. Fred's Stores of Tenn., Inc.*, No. 5-cv-01171, 2006 WL 559596, at *2 (M.D. Ala. March 7, 2006) (quoting *Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1262 n.11 (5th Cir. 1998)).  Therefore, Plaintiff contends that "[t]o show that all defendants have consented to removal and, thus, that the rule of unanimity has been followed, courts have held that the removing defendant

must do more than simply state in the removal notice that all defendants consent to removal." *Smith v. Health Ctr. of Lake City, Inc.*, 252 F. Supp. 2d 1336, 1139 (M.D. Fla. 2003) (citations omitted).

As to the issue of timeliness of consent, Defendants rely on *Stone v. Bank of New York Mellon, N.A.*, in which the Eleventh Circuit endorsed the First Circuit's position that the unanimity requirement, while "strictly interpreted and enforced[,]" is not "a wooden rule." 609 F. App'x 979, 981 (11th Cir. 2015) (quoting *Esposito v. Home Depot U.S.A., Inc.*, 590 F.3d 72, 77 (1st Cir. 2009)). Thus, "[a] technical defect related to the unanimity requirement"—here, co-defendants' initial failure to join in or consent to the removal of the action—"may be cured by opposing a motion to remand prior to the entry of summary judgment." *Id.*; *see also Destfino v. Reiswig*, 630 F.3d 952, 957 (9th Cir. 2011) (holding that if any properly served defendants fail to join a petition for removal, resulting in a unanimity requirement defect, "the district court may allow the removing defendants to cure the defect by obtaining joinder of all defendants prior to the entry of judgment"). In response, Plaintiff points out that the Eleventh Circuit in *Stone* relied on a First Circuit opinion from 2009, *Esposito*, which pre-dated the amendment to the removal statute by Congress in 2011. 609 F. App'x at 981; Reply at 5. Further, the Eleventh Circuit in *Stone* failed to address the statutory amendment and codification by Congress of the unanimity rule. Reply at 5–6. And given that *Stone* is an unpublished opinion,[1] Plaintiff argues that the Court should instead rely on *Taylor v. Medtronic, Inc.*, 15 F.4th 148, 153 (2d Cir. 2021), as well as district court cases from this Circuit that have analyzed the issue *after* the 2011 changes—which have determined that the removal statute does not provide an exception that allows a defendant to cure its untimely

---

[1] Plaintiff notes that unpublished Eleventh Circuit opinions "are not considered binding precedent but they may be cited as persuasive authority." Reply at 5 (citing *United States v. Almedina*, 686 F.3d 1312, 1316 n.1 (11th Cir. 2012) (citing 11th Cir. R. 36-2)).

consent.

With this legal framework in mind, the Court begins by addressing the lack of unanimous consent by Defendants as a basis for remand and then considers Illinois Union and the Sidecar Defendants' failure to timely consent—a separate and distinct basis requiring remand.  The Court concludes by analyzing Defendants' purported exceptions to the unanimity requirement.

## I.  Lack of Unanimous Consent

Defendants have not carried their burden of establishing unanimous consent of *all* Defendants as Arcadian has not indicated its consent on the record.  *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001) (explaining that the removing party carries the burden of establishing that removal was proper at the time of removal).[2]  The Notice of Removal is stylized as only being made by QBE and only QBE's signature appears on the Notice—but it represents that "[a]ll defendants who have been properly joined and served consent to the removal of this action."  Notice of Removal ¶ 20.  However, in the Removal Status Report, QBE then represents that four of the Sidecar Defendants "purportedly do not join in or consent to the removal."  [ECF No. 24] at 4 n.2.  While counsel for these four Sidecar Defendants subsequently submitted an affidavit in connection with the Response indicating that these Defendants now consent to removal, Arcadian has not joined the Notice of Removal or the Opposition to the Motion to Remand—nor taken some affirmative action to inform the Court of its consent.

The "majority view is that the mere assertion in a removal petition that all defendants consent to removal fails to constitute sufficient joinder."  *Ala. Mun. Workers Comp. Fund, Inc. v. P.R. Diamond Prods., Inc.*, 234 F. Supp. 3d 1165, 1168 (N.D. Ala. 2017) (citation and quotation

---

[2]  In evaluating a motion to remand, courts make "determinations based on the plaintiff's pleadings at the time of removal;" but courts may consider "affidavits, depositions, or other evidence" submitted by the parties.  *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997); *Owens v. Life Ins. Co. of Ga.*, 289 F. Supp. 2d 1319, 1322 n.5 (M.D. Ala. 2003).

marks omitted); *see also Bacci v. Jenkins*, No. 19-25093, 2020 WL 9458892, at \*4 (S.D. Fla. July 24, 2020), *report and recommendation adopted*, 2020 WL 9458717 (S.D. Fla. Aug. 14, 2020) ("A defendant must avail himself of a previously filed removal petition (or otherwise file his own) with some affirmative action to inform the Court of its consent and/or joinder in a manner that is (1) timely and (2) binding." (citation and quotation marks omitted)).   The Court agrees that a defendant's consent to removal should be more than merely alleged.   As the Fifth Circuit has indicated, "there must be some timely filed written indication from each served defendant, or from some person or entity purporting to formally act on its behalf in this respect and to have authority to do so, that it has actually consented to such action.   Otherwise, there would be nothing on the record to 'bind' the allegedly consenting defendant." *Getty Oil Corp.*, 841 F.2d at 1262 n.11.

Given Arcadian's lack of consent, the record falls short of establishing "an official, affirmative and unambiguous joinder or consent to the notice of removal" by <u>all</u> Defendants.  *Cox*, 2017 WL 4453334, at \*2 (citation and quotation marks omitted); *cf. Stone*, 609 F. App'x at 981 (finding valid consent because although the co-defendant "did not join the notice of removal, it *did* oppose remand" (emphasis added)).   The only evidence of Arcadian's alleged consent is QBE's own assertions in the Removal Status Report and the Response, which are insufficient.  *Bettner v. Macy's Fla. Stores, LLC*, No. 14-20382, 2014 WL 808162, at \*1 (S.D. Fla. Feb. 28, 2014) (finding defendant's only evidence of co-defendants' consent being defendant's own assertions in the Removal Status Report and Response in Opposition to the Motion to Remand insufficient to establish proper binding manifestations of unanimous consent).[3]   As Defendants have failed to establish Arcadian's consent and thus unanimous consent, Plaintiff's Motion to Remand is due to

---

[3]   In his affidavit, counsel for Arch Reinsurance, Markel Bermuda, Arch Transactional, and HDI does not affirm the assertion by QBE's counsel that she consulted with the Sidecar Defendants' counsel before filing the Notice of Removal and all Sidecar Defendants consented to removal. *See* [ECF Nos. 39-1 and 39-2].

be granted in light of this defect in the removal procedure.

## II.   Failure to Timely Consent

The Court also finds that this action should be remanded based on a separate and distinct basis: Illinois Union and the Sidecar Defendants' failure to timely consent.  The Court adopts the Second Circuit's reasoning in *Taylor*, finding that the removal statute does not allow a defendant to consent to removal after the thirty-day deadline for removal lapses.  15 F.4th at 153.  As the Second Circuit reasoned, prior to Congress codifying the unanimity rule in 2011, it was merely a judge-made rule subject to judicially created exceptions.  *Id.* at 152.  "But now [courts] are limited to interpreting a clear statutory command from Congress that all defendants must consent to removal within thirty days of service.  Where, as here, Congress provides no exceptions to the rule, [courts] are not at liberty to create one."  *Id.*  To "read the removal statute as permitting late consent would not only overlook the statute's clear language, but would also undermine the 'rapid determination of the proper forum,' which [courts] have recognized as a goal of the removal process."  *Id.* at 151 (citation omitted).

In this case, the record indicates that QBE filed its Notice of Removal on December 30, 2025, [ECF No. 1], within the required 30-day period under section 1446(b), as QBE was served on December 10, 2025, [ECF No. 8].  Illinois Union did not file its consent until January 20, 2026, [ECF No. 24-2], and Great American, National Fire & Marine, Arch Reinsurance, Markel Bermuda, Arch Transactional, and HDI did not file their consent until February 3, 2026, [ECF Nos. 39 and 39-1].  Unlike the Notice of Removal, the other Defendants' filings of consent were not timely.[4]  Because their consent was untimely, the unanimity rule was violated.  Accordingly, this case should be remanded based on this procedural defect as well.

---

[4]  Notably, Defendants also misconstrue the Court's Order Requiring Removal Status Report.  Resp. at 2 ("This Court set the deadline to indicate such consent in the Removal Status Report to be filed on January

### III.   Exceptions to the Unanimity Requirement

There are three recognized exceptions to the unanimity requirement: "(1) the non-consenting defendants ha[ve] not been served with process at the time the notice of removal [i]s filed; (2) the [non-]consenting defendants are nominal or formal defendants; or (3) removal is pursuant to § 1441(c)." *Diebel v. S.B. Trucking Co.*, 262 F. Supp. 2d 1319, 1329 (M.D. Fla. 2003) (citation and quotation marks omitted).   Defendants contend that the first and second exceptions apply and further argue that the Sidecar Defendants do not need to consent since Illinois Union validly consented on their behalf as the Lead Claims Agreement Party.   *See generally* Resp.

As noted above, the absence of Arcadian's consent and the untimely consent of Illinois Union and the Sidecar Defendants renders removal improper.   While Defendants' exceptions mitigate Arcadian's lack of consent and the other Sidecar Defendants' untimely consent, they fail to eliminate the issue of Illinois Union's untimely consent.   Nonetheless, the Court turns to these exceptions to illustrate why they are inapplicable and do not materially change the Court's analysis.

#### i.   *Whether some of the Sidecar Defendants were properly served*

Defendants first argue that Arcadian, Arch Transactional, and HDI were not properly served, so their consent is not required.[5]  Resp. at 3 nn.1–2.   The unanimity rule provides that all defendants who were "*properly joined and served*" must join in or consent to the removal of the

---

20, 2026, which deadline was met."). The Court's Order Requiring Removal Status Report simply states that QBE should include a "brief statement by each Defendant explaining whether or not each has joined in or consented to the notice of removal." [ECF No. 6] at 1. There is no language in the Order suggesting that the Court extended the statutory period for Defendants to join in or consent to removal—nor is the Court at liberty to create such an exception.

[5] Plaintiff argues that Defendants lack standing to contest service of process on Arcadian. Reply at 12. While that may be true in the context of a Rule 12 motion, *Bridges v. Poe*, No. 19-cv-01399, 2020 WL 3207278, at *3 (N.D. Ala. June 15, 2020), defendants may raise service of process arguments in the context of a motion to remand. *See, e.g.*, *Harris v. Pacificare Life & Health Ins. Co.*, 514 F. Supp. 2d 1280, 1286–87 (M.D. Ala. 2007); *White v. Bombardier Corp.*, 313 F. Supp. 2d 1295, 1300–01 (N.D. Fla. 2004).

action.  28 U.S.C. § 1446(b)(2)(A) (emphasis added).  Accordingly, the unanimity requirement does not apply where there is no evidence that a defendant was served or where the record establishes that service was improper under applicable law.  *See Bailey*, 536 F.3d at 1208 ("[A] defendant has no obligation to participate in any removal procedure prior to his receipt of formal service of judicial process.").  The sufficiency of service of process prior to removal is determined by the law of the state under which service was made.  *Usatorres v. Marina Mercante Nicaraguenses, S.A.*, 768 F.2d 1285, 1286 n.1 (11th Cir. 1985); *White*, 313 F. Supp. 2d at 1300.  Florida law permits effective service upon a corporation's or a limited liability company's registered agent at the registered address.  Fla. Stat. §§ 48.081(2), 48.062(2).

Here, Plaintiff has filed proofs of service for Arcadian, Arch Transactional, and HDI.  [ECF Nos. 12, 13, and 16].  The return receipts of service are addressed to the registered agents of said Defendants and signed by employees of the registered agents.  The Court finds that the proofs of service constitute *prima facie* evidence of perfected service of process on Arcadian, Arch Transactional, and HDI.  *See San-Way Farms, Inc. v. Sandifer Farms, LLC*, No. 20-cv-01969, 2021 WL 1840769, at *4 (M.D. Fla. May 7, 2021) ("If the return of service is regular on its face, then the service of process is presumed to be valid." (citation and quotation marks omitted)).  Defendants, however, posit that Arcadian, Arch Transactional, and HDI were not properly served because Plaintiff "served registered agents for different corporate entities, not the named Defendants." Resp. at 3 nn.1–2.  But Defendants do not advance any proof that the listed registered agents are not the registered agents of Arcadian, Arch Transactional, and HDI—nor do Defendants provide any affidavits stating that Arcadian, Arch Transactional, and HDI were not served at the time of removal.  *See White*, 313 F. Supp. 2d at 1300–01; *Harris*, 514 F. Supp. 2d at 1286–87.  Defendants have thus failed to demonstrate that Plaintiff's service on Arcadian, Arch Transactional, and HDI was improper such that Arcadian, Arch Transactional, and HDI's consent

to removal was not required.  Accordingly, the Court finds that the improper service exception to the unanimity rule does not apply here.[6]

### ii.  Whether the Sidecar Defendants are nominal defendants

Defendants next contend that the Sidecar Defendants do not need to consent to removal because they are nominal defendants.  Resp. at 6–9.  In general, "nominal or formal" parties are an exception to the unanimity rule, and they are not required to consent to removal.  *Diebel*, 262 F. Supp. 2d at 1329.  While "there is 'no bright-line rule' for distinguishing between real and nominal parties, the Eleventh Circuit has provided some guidance."  *Thomas Mach., Inc. v. Everest Nat'l Ins. Co.*, No. 20-60459, 2020 WL 2616193, at *4 (S.D. Fla. May 22, 2020) (quoting *Thermoset Corp. v. Bldg. Materials Corp of Am.*, 849 F.3d 1313, 1317 (11th Cir. 2017)).

First, nominal parties are "neither necessary nor indispensable" to the action.  *Thermoset Corp.*, 849 F.3d at 1317 (citation and quotation marks omitted).  The "ultimate test" of indispensability is whether, in the absence of the party, the court can "enter a final judgment consistent with equity and good conscience [that] would not be in any way unfair or inequitable to [the] plaintiff."  *Id.* (quotation marks omitted).  Second, nominal parties are not real parties in interest because they do not have a "real and substantial stake in the litigation" and do not exercise "substantial control over the litigation."  *Broyles v. Bayless*, 878 F.2d 1400, 1403 (11th Cir. 1989) (emphasis omitted).  This determination of "whether or not a named defendant is a nominal party

---

[6]  The Court also notes that Defendants appear to have waived any defense based on insufficient service of process.  Indeed, Defendants' Motion to Dismiss, [ECF No. 30], did not raise such a defense, even though it was available to them at the time of filing.  Accordingly, under Federal Rule of Civil Procedure 12(h)(1)(A), Defendants have waived their defense based upon insufficient service of process.  FED. R. CIV. P. 12(h)(1)(A) (noting that parties waive any defense based on insufficient process or insufficiency of service of process, among others, when a party makes a motion under this rule without "raising a defense . . . that was available to [it and] omitted from its earlier motion" (citing FED. R. CIV. P. 12(g)(2))); *Heath v. Fed. Nat'l Mortg. Ass'n*, No. 12-cv-00262, 2012 WL 12874135, at *3 (N.D. Ga. Dec. 4, 2012) (finding defendants waived their defense to the motion to remand based on imperfect service of process by failing to raise such a defense in their earlier-filed motion to dismiss).

depends on the facts in each case." *Tri-Cities Newspapers, Inc. v. Tri-Cities Printing Pressmen and Assistants' Loc. 349*, 427 F.2d 325, 327 (5th Cir. 1970).

Here, the Sidecar Defendants are necessary and indispensable to the action. In the operative Complaint, Plaintiff seeks relief from the Sidecar Defendants. Consequently, the Court cannot conclude that awarding a final judgment in the absence of the Sidecar Defendants would be fair or equitable to Plaintiff. *See Romero v. Kinsale Ins. Co.*, No. 25-20084, 2025 WL 837820, at *6 (S.D. Fla. Mar. 18, 2025); *Spain v. Bice*, No. 23-cv-01681, 2024 WL 3106898, at *5 (N.D. Ala. June 24, 2024) (finding defendants "have a material interest as defendants in the state court action, making them necessary parties"); *see also Lincoln Property*, 546 U.S. at 93 ("A named defendant who admits involvement in the controversy and would be liable to pay a resulting judgment is not 'nominal' in any sense except that it is named in the complaint.").

Nevertheless, Defendants contend that the Sidecar Defendants "lack the substantial litigation control or independent coverage authority required to qualify as real parties." Resp. at 9. "The definition of a 'real party in interest,' however, breaks down in the area of insurance law because of the courts' historic treatment of insurance companies in tort litigation." *Broyles*, 878 F.2d at 1403–04. The Eleventh Circuit has outlined three exceptions when it comes to insurance companies as real parties in interest: "[(1) where the insurance companies] have become subrogated to the rights of their insured after payment of the loss, [(2)] are defending actions brought directly against them, or [(3)], for some reason, they must assume primary and visible control of the litigation." *Id.* at 1404. Under the second exception, a direct action constitutes "any action in which the insurance company is being sued for its own acts or omissions" brought "over such issues as payment or coverage." *Id.* at 1404 & n.1. Such is the case here. *See Beck v. 4US Corp.*, No. 25-cv-0454, 2026 WL 866796, at *10 (S.D. Ala. Mar. 30, 2026) ("Because a claim for breach of contract clearly challenges the insurer's acts or omissions, and because an insurer

presumably has no option not to defend a breach of contract claim (unless it is willing to suffer judgment by default), such a claim may satisfy the 'direct action' exception as articulated in *Broyles*.").

Defendants acknowledge such an exception, but argue it is inapplicable because "[w]hen courts have declined to find nominal-party status, the insurers were direct defendants in a materially different sense: they asserted their own coverage defenses, made independent strategic decisions about how the litigation would be conducted, and faced individualized exposure that turned on positions unique to them." Resp. at 8 (citing *Summerlin v. Nelson*, No. 17-cv-00036, 2017 WL 2177361 (M.D. Ala. Apr. 21, 2017), *report and recommendation adopted*, 2017 WL 2177337 (M.D. Ala. May 17, 2017); *James v. Mejia*, 512 F. Supp. 3d 1255, 1259 (M.D. Ala. 2021)).  However, as courts in this Circuit have recognized, "[n]either *Navarro* nor *Broyles* establishes a general rule that an otherwise non-nominal party is nevertheless to be deemed nominal unless it controls the litigation.  On the contrary, *Broyles* state[s] that a 'direct stake in the litigation' can make a party a real party in interest 'regardless of its degree of participation.'" *Beck*, 2026 WL 866796, at *17 (citing *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 465 (1980); *Broyles*, 878 F.2d at 1405); *see also Smith v. Brazee*, No. 9-cv-00658, 2010 WL 11614078, at *7 n.13 (N.D. Ala. Jan. 19, 2010).  The Sidecar Defendants have a direct stake in this litigation, and no degree of passivity regarding their defense can transform them from real parties in interest to nominal parties.  *See Beck*, 2026 WL 866796, at *17; *Lincoln Property*, 546 U.S. at 93.

### iii.  Whether Illinois Union as the Lead Claims Agreement Party may consent on behalf of the Sidecar Defendants

Although the removal statute specifically states that "*all defendants* who have been properly joined and served must join in or consent to the removal of the action," 28 U.S.C. § 1446(b)(2)(A) (emphasis added), Defendants argue that Illinois Union validly consented on the

Sidecar Defendants' behalf as the designated Lead Claims Agreement Party. Resp. at 9–11. The Sidecar Policies provide: "Any claim is to be controlled and managed by the Lead Claims Agreement Party. The Insurer(s) agree to follow the decisions of the Lead Claims Agreement Party, as well as the determinations by the Lead Claims Agreement Party with respect to anything involving a claim (including but not limited to any decision that affects rights under the policy, including but not limited to subrogation (including waivers), erosion, increase or decrease of retention, settlement, and/or following the Primary Policy)." Compl., Ex. B at 218, 226. Accordingly, Defendants maintain that "anything involving a claim" encompasses the Sidecar Defendants' consent to removal of this action from state to federal court. *See* Resp. at 9–11. In other words, Defendants contend that they validly contracted around the unanimity requirement in section 1446(b)(2)(A) as the Sidecar Defendants waived their right to consent to removal.

Defendants, however, provide no legal authority to support the proposition that parties can contract around the statutory unanimity requirement. *See id*. To be clear, the Court acknowledges contractual provisions, such as forum selection clauses, can constitute a contractual waiver of a party's right to removal. *See, e.g.*, *Snapper*, 171 F.3d at 1263 (finding, under ordinary contract principles, that the forum selection clause constitutes a waiver of the right to removal); *Russell Corp. v. Am. Home Assur. Co.*, 264 F.3d 1040, 1049 (11th Cir. 2001), *abrogated on other grounds by Overlook Gardens Props., LLC v. ORIX USA, L.P.*, 927 F.3d 1194 (11th Cir. 2019). But the Court is unaware of a case finding that a contractual provision like the one here—wholly outside of the forum selection context and entirely dependent on general language "involving a claim"—constitutes a waiver of the statutory right to consent to removal.

More importantly, Plaintiff correctly points out that "[t]here is no such thing as implied joinder or consent." *Cox*, 2017 WL 4453334, at *2 (citation and quotation marks omitted) (finding defendant's assertion in the notice of removal that counsel "communicated with [co-defendant's]

counsel" and he "informed [counsel] of his client's consent to this removal" was "simply insufficient" alone to establish co-defendant's consent). Plaintiff relies on *Quinn v. CVS Pharmacy, Inc.*, where defendants argued that Holiday impliedly consented to removal because CVS, the parent company of Holiday, consented; therefore, "it [was] essentially the same party consenting to the removal." No. 23-cv-00644, 2024 WL 3548895, at *2 (M.D. Fla. July 26, 2024) (alternation omitted). The court in *Quinn* disagreed with the defendants and remanded the action, finding that "a parent corporation cannot consent to removal on behalf of its subsidiary; a subsidiary is still a separate defendant, and unanimity of defendants is required for removal." *Id.* (alteration omitted) (quoting *Lampkin v. Media Gen., Inc.*, 302 F. Supp. 2d 1293, 1294 (M.D. Ala. 2004)). In doing so, the *Quinn* court also noted "the fact [that] both defendants share the same counsel, without more, [is of no] help." *Id.* (citing *Manzanarez v. Liberty Mut. Fire Ins. Co.*, No. 19-cv-11724, 2019 WL 4010926, at *3 (E.D. La. Aug. 26, 2019) ("Consent or joinder will not be implied simply because consenting and non-consenting defendants have the same attorney.")).

Defendants attempt to distinguish *Quinn* by underscoring that they "have shown 'more' here—an express, on-the-record consent filed in a representative capacity." Resp. at 10. But Illinois Union's Certificate of Consent to Removal, [ECF No. 24-2]—which attempts to consent "on behalf of itself and all excess sidecar insurers"—falls short. It does not satisfy the requirement that the Sidecar Defendants must *independently* consent for purposes of unanimity. Accordingly, the Court finds that Illinois Union may not consent on the Sidecar Defendants' behalf as the designated Lead Claims Agreement Party to satisfy the unanimity requirement.

## CONCLUSION

For the reasons set forth above, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion to Remand, [ECF No. 27], is **GRANTED**.

2.   This case is **REMANDED** to the Eleventh Judicial Circuit Court in and for Miami-Dade County, Florida for lack of unanimous consent by Defendants.

3.   The Clerk of Court is **DIRECTED** to forward a copy of this Order to the Clerk of Court for the Eleventh Judicial Circuit in and for Miami-Dade County, Florida.

4.   The Clerk is instructed to **CLOSE** this case.

5.   All deadlines are **TERMINATED**, and any pending motions are **DENIED AS MOOT**.

DONE AND ORDERED in Miami, Florida this 28th day of May, 2026.

_____

**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**